## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SHAFI AGABA *et al.*,

        *Plaintiffs*,

    v.

TRIPLE CANOPY, INC. *et al.*,

        *Defendants*.

No. 22-cv-00002 (DLF)

## MEMORANDUM OPINION

The plaintiffs, Ugandan citizens who served as armed security guards at a U.S. military base in Afghanistan, bring this suit against U.S. defense contractor Triple Canopy, Inc. and its parent Constellis Inc. f/k/a Constellis Group, Inc., under the Trafficking Victims Protection Act (TVPA), 18 U.S.C. §§ 1589 *et seq.*  Before the Court is the defendants' Motion to Dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure.  Dkt. 9.  For the reasons that follow, the Court will grant the motion.

## I.    BACKGROUND

The plaintiffs are Ugandan citizens recruited to work as armed guards at Forward Operating Base Shorab, Afghanistan.  Compl. ¶¶ 4, 29–49, Dkt. 1.  They allege that the defendant military contractor and parent company "intentionally developed and implemented a fraudulent scheme to instill fear in Plaintiffs and render them vulnerable to forced labor."  *Id.* ¶ 6.  According to the plaintiffs, the defendants "intentionally, willfully and fraudulently mischaracterized Plaintiffs as [independent contractors] as opposed to employees."  *Id.* ¶ 13.  This mischaracterization was meant to "create an atmosphere whereby the Plaintiffs feared they could have their agreements terminated and be deported without the rights, protections or benefits afforded employees."  *Id.*  The plaintiffs

also allege that the defendants engaged in various forms of misconduct, including demeaning remarks, denial of employment benefits, withholding the plaintiffs' passports for an unnecessarily long period of time, and depositing only $380 in their bank accounts when $400 was promised. *See id.* ¶¶ 57, 74–81, 94.  The plaintiffs allege that they were generally "justified in their fear of termination and deportation based on the prior comments and actions" of the defendants' agents. *Id.* ¶ 84.  When they continued to express that they were "interested in the deduction from their pay [and their] treatment," they were allegedly terminated and deported.  *Id.* ¶¶ 99–101.  They further allege that they have since been "blacklisted" for "abandon[ing] their post" when they merely complied with an instruction to return certain weapons to storage.  *Id.* ¶ 83.  Plaintiffs claim that the defendants' conduct amounted to the imposition of forced labor in violation of the TVPA. *Id.* ¶¶ 114–134.

To support jurisdiction, the plaintiffs allege that both defendants have "extensive and consistent contacts with the District of Columbia."  Compl. ¶¶ 21, 23.  Triple Canopy "derives most of its revenue from security contracts awarded by the U.S. Department of State and DoD." Compl. ¶¶ 20–21.  And Constellis "identif[ies] itself as a company with its headquarters in the D.C. metro area" and, through Triple Canopy, "perform[s] U.S. government contracts, including the . . . [c]ontract under which Plaintiffs provided services" relevant to the lawsuit.  *Id.* ¶¶ 22–23.

## II.    LEGAL STANDARD

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a party may move to dismiss an action when the court lacks personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).  "On such a motion, the plaintiff bears the burden of 'establishing a factual basis for the exercise of personal jurisdiction' over each defendant."  *Triple Up Ltd. v. Youku Tudou Inc.*, 235 F. Supp. 3d 15, 20–21 (D.D.C. 2017) (quoting *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990)).

To meet this burden, a plaintiff cannot rely on conclusory allegations, *id.*, but rather "must allege specific facts connecting the defendant with the forum," *Shibeshi v. United States*, 932 F. Supp. 2d 1, 2–3 (D.D.C. 2013) (citation omitted).

When ruling on a 12(b)(2) motion, the court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *Triple Up Ltd.*, 235 F. Supp. 3d at 20 (citation omitted). "Ultimately, the [c]ourt must satisfy itself that it has jurisdiction to hear the suit." *Id.* at 20–21 (cleaned up).

## III.    ANALYSIS

This Court "may exercise one of two types of personal jurisdiction: (1) 'general or all-purpose jurisdiction' or (2) 'specific or case-linked jurisdiction.'" *Lewis v. Full Sail, LLC*, 266 F. Supp. 3d 320, 323 (D.D.C. 2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The plaintiffs disclaim any argument that the Court has specific jurisdiction over the defendants. *See* Opp'n at 1, Dkt. 11. The remaining dispute is whether the defendants are subject to general personal jurisdiction in the District of Columbia. *See* Fed. R. Civ. P. 4(k)(1)(A) (jurisdiction proper in federal court where the defendant "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located"); *see also Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) ("A court with general jurisdiction may hear any claim against [the] defendant . . . ." (emphasis omitted)).

District of Columbia courts have interpreted the District's service of process laws as conferring general jurisdiction over a foreign corporation "doing business" in the District, D.C. Code § 13-334(a), *i.e.*, "a foreign corporation which carries on a consistent pattern of regular business activity within the jurisdiction." *AMAF Int'l Corp. v. Ralston Purina Co.*, 428 A.2d 849, 850 (D.C. 1981). Section 13-334(a)'s jurisdictional scope is generally "co-extensive with the

reach of constitutional due process." *Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 889 (D.C. Cir. 2021) (citation omitted).  To be consistent with due process, "only a limited set of affiliations with a forum will render a defendant amenable to general jurisdiction in [the] State." *Bristol-Myers Squibb*, 137 S. Ct. at 1780 (cleaned up).  For a corporation, the "place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (cleaned up).  Here, neither defendant falls into those paradigm cases: Triple Canopy is incorporated in Illinois, Constellis is incorporated in Delaware, and both companies are headquartered in Virginia—near, but not in, the District of Columbia.  *See* Compl. ¶¶ 23, 97; *see also* Dkt. 9-2.

The plaintiffs assert that the defendants are nonetheless subject to jurisdiction because, according to them, the defendants are "at home" in the District.  Opp'n at 1.  The Supreme Court has left open the "possibility that in an exceptional case, a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler*, 571 U.S. at 139 n.19 (citation omitted).  For such an exceptional case, however, it would not be enough for a corporation's contacts with the forum to be "continuous and systematic"; rather, they would have to be "so continuous and systematic as to render [the corporation] essentially at home in the forum State." *Id.* at 139 (cleaned up).

The plaintiffs have not met their burden to show that this is such an "exceptional" case.  In large part, they suggest that the defendants are amenable to jurisdiction in the District because of their substantial contracts with the federal government, which the plaintiffs say account for 90% of the defendants' revenue.  *See* Opp'n at 3.  But even assuming that extensive contracting with an out-of-state counterparty could generally be sufficient to make a defendant "at home" in the

counterparty's state, applicable caselaw precludes such a conclusion here.  Under the "government contacts" exception, "entry into the District of Columbia by nonresidents for the purpose of contacting federal governmental agencies is not a basis for the assertion of in personam jurisdiction." *Envtl. Res. Int'l, Inc. v. Lockwood Green Engs., Inc.*, 355 A.2d 808, 813 (D.C. 1976). The government contacts rule thus bars the exercise of general personal jurisdiction over these defendants based solely on their status as repeat government contractors.

The plaintiffs' response—that the government "contacts" exception does not protect against considering government "contracts," Opp'n at 6–7—is unpersuasive.  The plaintiffs cite no authority in support of this proposition, but there is indeed "ongoing confusion" with respect to the scope and origin of the government contacts rule.  *Akhmetshin v. Browder*, 275 A.3d 290, 294 (D.C. 2022).  "This Court," however, "has consistently held that government contracting activities fall within the scope of the government contacts rule."  *Robo-Team NA, Inc. v. Endeavor Robotics*, 313 F. Supp. 3d 19, 25 (D.D.C. 2018); *see Alkanani v. Aegis Def. Servs., LLC*, 976 F. Supp. 2d 13, 25 (D.D.C. 2014) (collecting cases).  In the general-jurisdiction context, the case for applying the rule to protect a government contractor from D.C. jurisdiction over any claim against it, no matter its connection to the District, is particularly strong.  Although regularly applied to the D.C. long-arm statute, the government contacts principle "predates" it, "originating as a way of determining what it meant to be 'doing business' in the District within the meaning of the service-of-process statute"—which in turn governs the District's general jurisdiction over foreign corporations. *Akhmetshin*, 275 A.3d at 292; *see also Alkanani*, 976 F. Supp. 2d at 29–31.  The longstanding rationale for the rule is that if an entity's "sole contact with the District consists of dealing with a federal instrumentality," subjecting it to jurisdiction in D.C. courts risks "convert[ing] the District of Columbia into a national judicial forum."  *Envtl. Res. Int'l*, 355 A.2d at 813.  To exercise general

jurisdiction here would do just that for many business entities that primarily work in federal government contracting.

The plaintiffs' remaining arguments are likewise unavailing. First, that the defendants' "home offices are approximately ten miles from the District of Columbia and this Court" is not relevant to the analysis. Opp'n at 3; *see also* Compl. ¶ 22 (highlighting headquarters "in the D.C. metro area"). That fact may indeed be "relevant for purposes of venue and convenience," Opp'n at 3, but limits on personal jurisdiction guard against more than the "practical problems resulting from litigating in the forum"; rather, they restrict the "coercive power of a State" based on "territorial limitations," *Bristol-Myers Squibb*, 137 S. Ct. at 1780. Virginia borders the District of Columbia, but it is not a part of it, and the defendants "cannot be regarded as 'at home' in the District simply because [their] headquarters are nearby in Virginia and [they] conduct[] business activity in the District." *Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 174 (D.D.C. 2018).

Second, it also does not matter that the defendants have been named defendants in unrelated litigation in this district in the past. The plaintiffs cite only a single case in which the defendants were subject to specific personal jurisdiction for a claim under the D.C. Human Rights Act arising from events in the District. Opp'n at 4 (citing *Martinez v. Constellis/Triple Canopy*, 20-cv-153 (D.D.C.)). That is neither direct precedent holding that the defendants are amenable to *general* jurisdiction in D.C. nor indirect evidence that they are in fact "at home" here. *Cf. Doe I v. Apple Inc.*, 19-cv-3737, 2021 WL 5774224, at *9 (D.D.C. Nov. 2, 2021) (explaining that whether a defendant has itself "brought some lawsuits in the District of Columbia" or is "subject to a consent decree in a D.C. court . . . does nothing to inform the Court whether [it] is subject to general personal jurisdiction" in the District).

Finally, the plaintiffs ask in a single sentence, at the conclusion of their opposition, for "a limited jurisdictional discovery order."  Opp'n at 8.  There is no basis to grant jurisdictional discovery.  The plaintiffs have not made the requisite "detailed showing of what discovery [they] wish[] to conduct or what results [they] think[] such discovery would produce" that might establish jurisdiction.  *NBC-USA Hous., Inc., Twenty-Six v. Donovan*, 774 F. Supp. 2d 277, 295 (D.D.C. 2011) (citation omitted).  The Court will accordingly deny the plaintiffs' cursory request for jurisdictional discovery.

## CONCLUSION

For the foregoing reasons, the Court grants the defendants' motion to dismiss.  A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

December 1, 2022